Argued October 9, decided October 21, rehearing denied December 2, 1913.

# SMITH v. SMITH.

### (135 Pac. 876.)

**Waters and Watercourses—Right by Prescription—Burden of Proof.**

1. In an action for the destruction of the dam and headworks of an irrigating ditch claimed by the plaintiff, where the general issue was pleaded by the defendant, it was necessary for the plaintiff to prove his ownership of the property.

**Waters and Watercourses—Prescriptive Right—Weight of Evidence.**

2. In an action for the destruction of the dam and headworks of an irrigating ditch claimed by plaintiff and located upon the defendant's land, proof that plaintiff's predecessor was given permission by the company, which constructed the ditch, to use a certain amount of the water therefrom in return for a right of way across his land, without proof of the right of the company to maintain the dam on the defendant's land, does not show any ownership by the plaintiff of the dam and ditch in question.

**Waters and Watercourses—Appropriation—Character of Possession— Permissive Possession.**

3. Where plaintiff's predecessor was given a right to use a portion of the water in a ditch constructed by a mining company, the right to such use was permissive, even though the agreement bound the company to maintain a flow of water therein, and such use would not initiate an adverse possession.

[As to prescriptive title to water, see note in 93 Am. St. Rep. 711.]

From Josephine: FRANK M. CALKINS, Judge.

Department 1. Statement by MR. JUSTICE BURNETT.

This is a suit by Will C. Smith against W. G. Smith.

The plaintiff states that he is the owner of certain semi-arid lands in Josephine County, together with an irrigating ditch leading out of Wolf Creek to and upon his lands, and of a dam across that stream; that he and his grantors have used all the water from Wolf Creek and its tributaries above the dam through the ditch for more than 20 years for necessary irrigation and domestic purposes. The complaint then states:

"That plaintiff, his grantors and predecessors in interest, for more than 20 years prior to the acts of the defendant hereinafter alleged, have been in the open, notorious, exclusive, hostile, adverse and continuous use, possession, and occupation and enjoyment of all of said water during the irrigating season each year and of said ditch, dam and bulkhead and headgate, adversely to the defendant and the whole world under a claim of right and ownership to the use of said water and the whole thereof during the irrigating season of each and every year." The plaintiff also avers that the dam and headworks and part of the ditch mentioned are situated on lands owned by and in possession of the defendant; that sometime during the year 1910 the defendant wrongfully and in violation of plaintiff's rights and ownership tore out the headgate and blew up part of the dam, whereby the water of Wolf Creek flowed through the dam and away from the plaintiff's ditch so that he could not use the water, all to his damage in the sum of $1,000. The prayer is that, as against the defendant and his grantees, the plaintiff be declared to be the owner of all the water flowing in the creek above the dam, together with the ditch, dam, and headworks, and entitled to repair, maintain and operate the same, and that the plaintiff have judgment against the defendant for damages as alleged, together with a perpetual injunction against interfering with the plaintiff's use and enjoyment of the water.

The allegations of the complaint are denied by the answer. Certain new matter in the answer was disposed of on demurrer in the Circuit Court adversely to the defendant, and some questions are suggested in the argument based on the action of the court in that respect, which we do not deem it necessary to consider here. After hearing the testimony reported by a referee, the Circuit Court entered a decree in favor of

the plaintiff for $1,000 damages, and otherwise according to the prayer of the complaint. The defendant appeals.   REVERSED: SUIT DISMISSED.

For appellant there was a brief over the names of *Mr. Edward H. Richard* and *Messrs. Kollock & Zollner,* with an oral argument by *Mr. John K. Kollock.*

For respondent there was a brief and an oral argument by *Mr. William C. Hale.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. In the face of the general issue it became necessary for the plaintiff to establish his ownership of the dam and headworks and the ditch mentioned in his complaint.

2. As showing title from his immediate grantor, he read in evidence a deed dated July 31, 1908, from one Pollard to himself, conveying "for the consideration of $10 and other valuable considerations" the real property described by legal subdivisions in his complaint, "together with the water rights and ditches thereunto belonging and appertaining." Beyond that there is no paper title in evidence. The whole case of the plaintiff in that respect rests in parol and upon oral testimony. The substance of the testimony on behalf of plaintiff is to this effect: Between his own lands and the land of the defendant there is other intervening property. The dam is located about one mile from the premises of the plaintiff on the land of defendant. Some time in the early '80's what is called in the testimony a "Portland Company" constructed the ditch in question for mining purposes, conveying water to be used at a point about nine miles from the dam. When it was being constructed across the plaintiff's lands, the superintendent in charge of the work

agreed orally with plaintiff's grantor that, if he would allow the construction of the ditch across his lands, he might take out of it on his premises water sufficient to irrigate his garden and a small orchard not exceeding three or four acres in extent. The testimony shows that the plaintiff and his grantor have used water out of the ditch under that arrangement continuously during the irrigating seasons ever since until the destruction of the dam mentioned in the complaint. The question to be determined is whether this testimony shows ownership in the ditch and dam on the defendant's lands. No right is shown in the Portland Company in connection with defendant's land. No authority in the superintendent of the construction to make the agreement with the plaintiff's grantors is shown. Nothing whatever appears to bind the Portland Company or its predecessors in interest to maintain the ditch or the flow of water therein for any specified time or at all; and nothing is shown giving the plaintiff or his predecessors any interest whatever in the ditch or the headworks. The utmost that can be claimed from the testimony is that he had permission to take a limited amount of water out of that running in the ditch. His title did not extend to the ditch itself or to the headworks. In the absence of anything showing title in the Portland Company as against the defendant's predecessors in interest, the only effect to be given to the agreement between that concern and the grantor of plaintiff, conceding that the superintendent had authority to make it, would be personal between the parties to that agreement, and it could not affect the owners of the title to defendant's land. In other words, in order to control the action of the defendant on his own land, the plaintiff must establish a privity of estate in himself as to that land.

67 Or.—39

3. Even conceding that the arrangement between the Portland Company or its superintendent and the plaintiff's grantor bound the company to maintain a flow of water in the ditch, that would not amount to the initiation of the adverse title. Whatever right the plaintiff's predecessor acquired was permissive, and, no matter how long such an arrangement continues, it can never ripen into adverse title. There was a total failure of proof of the plaintiff's ownership of the ditch and dam in question or of any right to control the actions of the defendant upon his own land.

The decree is reversed and the suit dismissed.

REVERSED: SUIT DISMISSED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.